IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
October 17, 2022 08:37 AM
ST-2022-CR-00085
**TAMARA CHARLES**
**CLERK OF THE COURT**



### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS, )
                                )
               Plaintiff, )
                                )
        v.                    )      CASE NO. ST-22-CR-085
                                )
KYMANI T. DOLPHIN,         )
                                )      Cite as 2022 V.I. Super 88U
          Defendant.      )
_____ )

### MEMORANDUM OPINION

¶1     **BEFORE THE COURT** is a "Motion to Suppress" filed by Defendant Kymani Dolphin ("Dolphin" or "Defendant") on September 20, 2022. The People of the Virgin Islands (the "People") did not file an opposition and a suppression hearing was conducted on October 7, 2022. Assistant Attorney General John Barraco, Esquire represented the People and Territorial Public Defender Mary Ann Matney, Esquire represented Defendant, Kymani Dolphin, who was also present. Defendant's motion seeks to suppress all evidence seized from a search of his person and backpack and any statements made to law enforcement on Sunday, March 13, 2022, due to an illegal seizure. The Court heard the sworn testimonies of Virgin Islands Police Department ("VIPD") Officer Ashlyn Xavier ("Officer Xavier"), VIPD Forensics Bureau Detective Vernon Carr ("Detective Carr"), Virgin Islands Port Authority Officer Jeremy Charleswell ("Officer Charleswell"), and Ms. Abena Steward ("Steward"). For the following reasons, Defendant's motion will be denied.

## I.    FACTUAL BACKGROUND

¶2     On March 13, 2022, at approximately 8:47 am, Officer Ashlyn Xavier was dispatched to Altona and Welgunst, St. Thomas, Virgin Islands, after an anonymous 911 call was placed

reporting that there was a boy and girl fighting. The caller also described two vehicles, a black Acura jeep and a Honda vehicle. Upon arrival, Officer Xavier made contact with Detective Vernon Carr of the VIPD Forensics Bureau, who arrived first. Detective Carr testified that a black Acura jeep and a Honda vehicle were attempting to leave the area which led him to stop both parties. Detective Carr stopped the three individuals, later identified as Kymani Dolphin, Abena Steward, and Jasmine Gregoire.

¶3     Detective Carr testified that after he had stopped the Acura, Dolphin exited the vehicle and started walking towards Detective Carr at a "very brisk" pace. At that point, and for the officer's safety, Detective Carr patted down the Defendant and discovered an empty firearm magazine. He testified he immediately secured the Defendant and called for assistance because he was there by himself. Shortly thereafter, Officer Jeremy Charleswell with the Virgin Islands Port Authority arrived. Officer Charleswell testified that once he arrived, he placed the Defendant in handcuffs and Detective Carr advised Dolphin of his constitutional rights.

¶4     Detective Carr testified he then approached the Acura jeep and asked the driver and owner of the vehicle, Ms. Abena Steward, if he can search the vehicle and she consented. While conducting a search inside the vehicle, Detective Carr found a bag of clothes on the passenger side of the vehicle which belonged to the Defendant. Detective Carr stated he then went back to his vehicle to retrieve his gloves and while walking to his vehicle noticed a Michael Kors backpack in the grass along the roadway. Detective Carr stated the backpack was about 10 to 15 feet away from the Acura jeep lying in tall grass. He asked Steward if the backpack belonged to her and she stated "no." Detective Carr then asked the Defendant if he owned the backpack, to which the

Defendant replied that it was "probably abandoned property." Detective Carr then searched the Michael Kors backpack and found a firearm.

¶5      At that point, Detective Carr processed the scene and collected the brown Michael Kors backpack. Officer Xavier advised the Defendant of his constitutional rights and he agreed to answer Officer Xavier's questions. Dolphin told Officer Xavier the Michael Kors bag was his and that it contained "weed and a gun." When asked if the firearm belonged to him, the Defendant stated, "yes." When asked whether he had a license to carry the firearm, the Defendant stated, "no." The investigation revealed the bag contained a fully loaded Smith and Wesson SD9 VE 9mm firearm with an obliterated serial number and a projectile in the chamber, several small plastic bags, one large plastic bag with a green, leafy substance that field-tested positive for marijuana, and two small scales. The Defendant argues the physical evidence and statements made to law enforcement should be suppressed for the following reasons: 1) the search and seizure was based on an anonymous tip and had no indicia of reliability; 2) the search of the Defendant's person was without reasonable suspicion of illegal activity, making it unconstitutional; and 3) the Defendant was not advised of his Miranda rights before he was questioned, violating his Fifth Amendment right against self-incrimination. For the following reasons the Court will deny Defendant's motion.

## II.    LEGAL DISCUSSION

### A.  Standard for Analyzing a Motion to Suppress.

¶6      "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Murray*, 2010 WL 3069485 at *3 (D.V.I. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 132 (1978). If the search or seizure is warrantless, the burden shifts to the People to demonstrate that the search or

seizure was permissible under an exception to the Fourth Amendment's warrant requirement. Under the Fourth Amendment, people have the right "to be secure in their persons, houses...against unreasonable searches and seizures." U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (adding that this "right of personal security belongs as much to the citizen on the streets" as to a citizen in her home). In *Thomas v. People of the Virgin Islands*, quoting the U.S. Supreme Court, the Virgin Islands Supreme Court noted that searches conducted without a warrant are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions. *See Thomas v. People of the Virgin Islands*, 63 V.I. 595, 605 (V.I. 2015) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). [1]

¶7     The Fourth Amendment analysis typically proceeds in three stages. First, the Court asks whether a Fourth Amendment event, such as a search or a seizure, has occurred. Next, the Court considers whether that search or seizure was reasonable. If the search or seizure was unreasonable, the Court must then determine whether the circumstances warrant suppression of the evidence. *People of the V.I. v. Graham*, No. SX-18-CR-130, 2020 V.I. LEXIS 12 (Super. Ct. Feb. 11, 2020) (quoting *United States v. Smith*, 575 F.3d 308, 312-13 (3d Cir. 2009)). In order to pass constitutional muster, a warrantless search must be shown to fall within one of the few narrowly defined exceptions to the warrant requirement. *Government v. Fabiani-Ogno*, 20 V.I. 404 (Terr. Ct. 1984). However, while the Fourth Amendment ensures an individual's rights to be secure from unreasonable search and seizures, it does not require a police officer to ignore a possible

---

[1] Courts hold this protection in no higher regard, than when the search in question is executed at the home of the defendant, noting "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. Mallory*, 765 F.3d 373, 382 (3d Cir. 2014) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980).

crime. *People of the V.I. v. Archibald*, 50 V.I. 74, 84 (Super. Ct. 2008) (quoting *United States v. Chabot*, 531 F. Supp. 1063 (D.V.I. 1982)).

### B. The Anonymous Tip Provided Sufficient Justification for Detective Carr to Stop the Defendant from Leaving the Area and Subsequently Search and Seize Defendant's Person and Search his Bag.

¶8     The Defense argues that without more information, an anonymous tip is not enough to establish probable cause for a warrantless search or the issuance of a search warrant, therefore the officers lacked requisite reasonable suspicion to conduct a search under *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000). The Fourth Amendment protects people, not places, and wherever an individual may harbor a reasonable "expectation of privacy," he is entitled to be free from unreasonable governmental intrusion. *Terry v. Ohio*, 392 U.S. 1,9 (1968). Accordingly, the Fourth Amendment protects a person's expectations of privacy that society has recognized as reasonable. *Simmonds v. Virgin Islands*, 53 V.I. 549, 574 (V.I. 2010) (Swan, J. dissenting).

¶9     Under *Terry v. Ohio*, 392 U.S. 1,9 (1968), an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Id.* at 27. In regard to anonymous tips, the Supreme Court has held they are less reliable than tips from known informants and that they "create reasonable suspicion only when other contributing factors are present." *People of the Virgin Islands v. McIntosh*, 2008 V.I. LEXIS 47, *4 (V.I. Super. Ct. 2008) (citing *Florida v. J.L.*, 528 U.S. 266, 269 (2000)). In determining whether a stop based on anonymous tip was reasonable, the Court must consider the "'veracity,'

'reliability,' and 'basis of knowledge'" of the tip. *See Virgin Islands v. Isaac*, 2011 WL 4703076

*3 (V.I. Super. Ct. 2011). The Third Circuit has provided several factors to determine the reliability

of an anonymous tip:

> (1) whether the tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation;
> (2) whether the person providing the tip can be held responsible if her allegations turn out to be fabricated;
> (3) whether the content of the tip is not information that would be available to any observer;
> (4) whether the person providing the information has recently witnessed the alleged criminal activity; or
> (5) whether the tip predicts what will follow, as this provides the means to test the informant's knowledge or credibility.

*See Virgin Islands v. Isaac*, 2011 WL 4703076 *3 (V.I. Super. Ct. 2011).

¶10     Defendant relies on *People of the Virgin Islands v. McIntosh*, 2008 V.I. LEXIS 47 (V.I.

Super. Ct. 2008) to argue the anonymous tip in this case, which was not made face-to-face, but

rather from a phone call, and provides no information of how the person knows the information

they claim to convey, is unreliable because there is no indication of the anonymous caller's motive

or source of information, which are necessary to assess the trustworthiness of the information. He

argues there was no indication that a crime was occurring other than the statement there was a

"fight" between a boy and a girl and further, that there was no indication why the caller felt help

was necessary or provided any details regarding the "fight," therefore there is nothing to support

that the tip came from a reliable source. Defense counsel further argues this anonymous tip is

insufficient for Detective Carr to form reasonable suspicion to search the Defendant's person.

¶11     In *McIntosh*, the court held the anonymous tip did not provide reasonable suspicion for a

vehicle stop. In that case, an officer was informed, face-to-face, by an unidentified minor that there

were some males in possession of a firearm on a sidewalk in Oswald Harris Court ("OHC") near a parked maroon four-door Toyota Corolla. The officer subsequently stopped the vehicle, consisting of 4 to 5 occupants, as the car was leaving OHC and conducted a search, resulting in the finding of an unregistered firearm. The court held the anonymous tip did not provide the officer with sufficient reasonable suspicion to search the vehicle because based on the tip, the officer could not have justifiably concluded the same persons the minor saw on the street when the car was parked were the occupants inside the vehicle. Additionally, the tip did not provide reasonable suspicion of criminal activity. The minor only told the officer that there were people standing near a car with a gun and in the Virgin Islands it is not unlawful *per se* to possess a firearm. This Court agrees with the holding in *McIntosh,* but finds it inapplicable to the case at bar.

¶12    Here, Detective Carr was responding to a call about a dispute in progress to further investigate. The call came from an anonymous person who stated there was a fight occurring between a boy and a girl outside. The caller did not provide a description of the individuals involved nor did she describe whether there was a weapon involved. However, the caller described the two vehicles that were present, a black Acura jeep and a Honda vehicle. This anonymous tip was a telephone caller reporting her observations to the 911 dispatcher as she was witnessing the event. In this case, the events occurred at the top of a hill, in a residential neighborhood, unlike the housing community in *McIntosh,* where many residents live and there was no confirmation that the persons the minor observed with a gun by the car were the same occupants in the car. Further, there was no indication of a traffic violation in *McIntosh* necessitating the stop. When Detective Carr arrived, he did not observe a fight, but he observed the two vehicles as described in the report, a male and two females, and the male immediately walked towards him in a brisk manner. The

7

description of the vehicles and the individuals aligning with what was reported gave Detective Carr reasonable suspicion to stop the vehicles from leaving the area to determine if there was a dispute.

¶13    Additionally, the anonymous tip was sufficient to satisfy the standard of reasonable suspicion. To satisfy the standard of reasonable suspicion, it is not necessary that the suspect actually has done or is doing anything illegal; reasonable suspicion may be "based on acts capable of innocent explanation. *People of the V.I. v. Thomas*, 2014 V.I. LEXIS 28 (Super.Ct.2014) (quoting *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010) (citing *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir.2000)). Here, the caller provided sufficient information to establish she witnessed criminal activity. The Court heard the 911 recording of a woman who did not want to become involved, but apparently sought police intervention to quell what she determined was a fight in the street. From that, Detective Carr can reasonably infer an assault may have occurred or is about to occur. Although Detective Carr testified that he did not witness a dispute as reported, because of what was reported in the 911 call and because the vehicles in the area matched the description, he stopped both the black Acura and Honda vehicles from leaving the area to alleviate the dispute.

¶14    Detective Carr also testified that after he stopped both vehicles, the Defendant exited the Acura vehicle and started walking briskly towards him. The Defendant's movements towards Detective Carr provided sufficient cause to perform a pat down of the Defendant for both his and the Defendant's safety independent from the anonymous tip.

¶15    Defense counsel also orally argued the anonymous tip violates the Defendant's right to confrontation under the Fifth Amendment. The Court disagrees. In this case, the Defendant is being

8

charged with multiple counts involving unauthorized possession of a firearm and marijuana. The tip did not provide any information regarding the marijuana, drug paraphernalia, or firearm found in the Defendant's backpack. Accordingly, the anonymous tip only provided the context for how law enforcement became involved and the initiation of the investigation which led to the multiple unauthorized possession charges. *See Rayner v. Overmyer*, 2021 U.S. Dist. LEXIS 226702 *33-35 (E.D. Pa. 2021). Thus, the anonymous tip is not essential to the People's charges against the Defendant and therefore does not violate the confrontation clause.

¶16     Further, the Defendant argues Detective Carr did not have reasonable suspicion to search his Michael Kors bag. However, Detective Carr testified that both Ms. Steward and the Defendant stated the bag, which was located 10 to 15 feet away from the car in the grass, did not belong to them. Upon learning the bag was abandoned, Detective Carr searched the contents and found the gun and marijuana. The Fourth Amendment's protection against unlawful searches and seizures does not extend to abandoned property. *See People v. Bethel*, 2017 WL 3327642 *4 (V.I. Super. Ct. 2017). Accordingly, the search of the bag was constitutional.

### C. Standard of Review When Suppressing Statements Made During Custodial Interrogation.

¶17     Miranda warnings are required for custodial interrogations. *See Castillo v. People*, 59 V.I. 240, 265 (V.I. 2013) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). A suspect is "in custody" when he has been "deprived of freedom of action in any significant way." *Ramirez v. People*, 56 V.I. 409, 419 (V.I. 2012) (citing *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007)). However, a suspect can waive his rights by making a statement after Miranda warnings have been given. *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981)). A defendant can only waive his constitutional rights knowingly, voluntarily, and without coercion. *See People v.*

*Azzam*, No. ST-2016-CR-00232, 2017 V.I. LEXIS 157, at *3 (V.I. Super. Ct. Nov. 14, 2017) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

¶18    The burden rests on the defendant to establish the evidence sought to be suppressed was illegally obtained. *Azzam*, 2017 V.I. LEXIS 157, at *2. Once the defendant alleges facts demonstrating he was in custody and subject to an interrogation, the burden then shifts to the People to prove by a preponderance of the evidence that the police complied with *Miranda v. Arizona*, 384 U.S. 436 (1966) and that the statement was voluntary." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

### D. Defendant's Statements Will Not Be Suppressed Because His Statements Were Made Knowingly, Voluntarily, and Intelligently.

¶19    The Defendant argues that his statements were the product of a custodial interrogation. He argues that his statements regarding the fight with his girlfriend were made before he was advised of his rights.

¶20    A defendant's waiver of Miranda is voluntary where the waiver "[is] the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010); *United States v. Bonner*, 469 F. App'x 119, 125 (3d Cir. 2012); *see also People of the V.I. v. Frett*, No. ST-18-CR-208, 2019 V.I. LEXIS 119, at *21 (Super. Ct. Oct. 18, 2019). Courts look at the "totality of the circumstances" surrounding the statements made by a defendant in determining whether a defendant's waiver was made knowingly, voluntarily, and intelligently. *Sweet v. Tennis*, 386 F. App'x 342, 345 (3d Cir. 2010); *United States v. Rivera*, No. 3:20-cr-0020, 2020 U.S. Dist. LEXIS 242139, at *6 (D.V.I. Dec. 23, 2020). Such factors include the defendant's background,

experience, conduct, and any signs of coercion from law enforcement. *United States v. Scotland*, No. 2014-004, 2014 U.S. Dist. LEXIS 70172, at *2 (D.V.I. May 22, 2014).

¶21    Upon Officer Xavier's contact with the Defendant, he made statements that he was having an argument with his girlfriend and that she refused to drive him to work, so he called his coworker, Ms. Steward, for a ride and subsequently was stopped by Detective Carr. After learning this, per Officer Xavier's affidavit, she then advised Dolphin of his constitutional rights. Defendant argues these statements regarding the argument should be suppressed because they were offered before Dolphin was advised of his rights. However, Detective Carr and Officer Charleswell both testified that the Defendant was advised of his rights prior to Officer Xavier's arrival. Courts have held that a written waiver is not necessary for a Defendant to waive his rights. *See Berghuis*, 560 U.S. at 386; *see also Scotland*, 2014 U.S. Dist. LEXIS 70172, at *6. A defendant's waiver may be verbal or inferred from conduct sufficient to constitute a waiver of constitutional protections. *See Scotland*, 2014 U.S. Dist. LEXIS 70172, at *7. A willingness to speak to law enforcement is consistent with behavior of waiving one's Miranda rights. *See Id.* Here, the statements were made to Officer Xavier after the Defendant had already been advised of his rights by Detective Carr. There is no evidence showing these statements were made in response to any police interrogation and the record does not reflect any coercion from law enforcement to elicit such statements from Defendant. Therefore, these statements were given freely and voluntarily and constitute a waiver of his rights. Accordingly, the Court will not suppress the Defendant's statements.

## III.    CONCLUSION

¶22    For the above-stated reasons, Defendant's motion to suppress will be denied. The anonymous tip provided sufficient justification for Detective Carr to stop the individuals from

11

leaving the area and the Defendant's actions created reasonable suspicion for Detective Carr to perform a pat down and to search his backpack. Similarly, Defendant's post-Miranda statements were made knowingly, voluntarily, and intelligently and were effectively a voluntary waiver, hence no violation of his constitutional rights and are therefore admissible. Accordingly, the Court will deny the Defendant's motion to suppress.

An Order accompanying this Memorandum Opinion follows.

Dated: October 17, 2022

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor 10 / 18 / 2020

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

PEOPLE OF THE VIRGIN ISLANDS,   )
                                )
              Plaintiff,        )
                                )
      v.                        )        CASE NO. ST-22-CR-085
                                )
KYMANI T. DOLPHIN,              )
                                )        Cite as 2022 V.I. Super 88U
              Defendant.        )
_____  )

## ORDER

**THIS MATTER** came before the Court on October 7, 2022, for a suppression hearing. The Court heard the sworn testimonies of Detective Vernon Carr, Officer Ashlyn Xavier, Officer Jeremy Charleswell, and Abena Steward. The Court also head oral arguments from both counsel. Based on the representations made by counsel, the testimony adduced at the hearing, and for the reasons set forth on the record, it is hereby

**ORDERED** that Defendant's motion to suppress is **DENIED**; and it is further

**ORDERED** that both counsel shall submit their pretrial memoranda by **Tuesday, October 25, 2022**; and it is further

**ORDERED** that a copy of this Order shall be distributed to Assistant Attorney General John Barraco, Esquire, and Territorial Public Defender Mary Ann Matney, Esquire.

Dated: October __17__, 2022

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor  10 / 18 / 2022